[Cite as *Cooper v. Cooper*, 2015-Ohio-4048.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


TIFFANY L. COOPER

      Plaintiff-Appellant

-vs-

GARY F. COOPER

      Defendant-Appellee

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. Sheila G. Farmer, J.
Hon. John W. Wise, J.

Case No. 14 CA 100

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 13 DR 515 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 30, 2015 |


APPEARANCES:

For Plaintiff-Appellant

SUSAN M. LANTZ
434 East Rich Street
Columbus, Ohio 43215

For Defendant-Appellee

ORVAL E. FIELDS
KRISTI R. McANAUL
660 Hill Road North, P. O. Box 220
Pickerington, Ohio 43147

*Wise, J.*

{¶1}.    Plaintiff-Appellant Tiffany L. Cooper appeals from the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, which granted her a divorce from Defendant-Appellee Gary F. Cooper. The relevant procedural facts leading to this appeal are as follows.

{¶2}.    Appellant Tiffany and Appellee Gary were married in October 2007 in Pataskala, Ohio. Appellant is the mother of a son, C.M.C., born in 2003, who was adopted by appellee in 2010. The parties maintained a marital residence on Essex Place in Pataskala, although they began living separate and apart in January 2012. The marital residence was encumbered by a first and second mortgage, both held by U.S. Bank.

{¶3}.    Appellant is employed as an insurance analyst in Dublin, Ohio. Appellee was most recently employed as a gas pipeline inspector, which sometimes required travelling to out-of-town worksites. However, appellee was laid off in January 2014. At the time of the divorce trial at issue, he remained unemployed.

{¶4}.    On May 3, 2013, appellant filed a complaint for divorce against appellee in the Licking County Court of Common Pleas, Domestic Relations Division, along with a proposed shared parenting plan. A number of temporary orders were issued over the ensuing months.

{¶5}.    The case proceeded to evidentiary hearings before the trial court on June 30, 2014 and July 15, 2014, as well as non-oral proceedings on August 29, 2014 and September 18, 2014.

{¶6}.    The parties also entered certain stipulations, particularly on the issue of property division, as further discussed *infra*. Said stipulations were filed with the trial court on June 30, 2014.

{¶7}.    The trial court issued a forty-five page final judgment entry of divorce on October 14, 2014. Among other thing, appellant was awarded the marital residence and was made responsible for the mortgages thereon.

{¶8}.    On November 10, 2014, appellant filed a notice of appeal. She herein raises the following five Assignments of Error:

{¶9}.    "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY INCLUDING THE REAL ESTATE AS AN 'OFFSET' IN THE DIVISION OF THE PARTIES' ASSETS AND DEBTS AND ERRED BY MAKING ORDERS REGARDING PAYMENT OF THE FIRST MORTGAGE AND REFINANCING, BOTH IN CONTRAVENTION OF THE PARTIES' AGREED WRITTEN STIPULATIONS.

{¶10}.    "II.    THE TRIAL COURT ERRED AS A MATTER OF LAW BY EXCLUDING APPELLEE'S SECRETED NON-TAXABLE CASH INCOME OF $79,390.00 AS A MARITAL ASSET FOR PURPOSES OF DIVISION OF THE PARTIES' DEBTS AND ASSETS, FOR PURPOSES OF AWARDING SPOUSAL SUPPORT AND AWARDING ATTORNEY FEES.

{¶11}.    "III.  THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY FAILING TO IMPUTE INCOME TO APPELLEE FOR PURPOSES OF CHILD SUPPORT WHICH WAS IN DISREGARD OF R.C. §3119.01(C)(7), THE EVIDENCE ADDUCED, AND ITS OWN STATEMENTS AT TRIAL.

**{¶12}.** "IV.  THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY FAILING TO AWARD APPELLANT ANY AMOUNT OF SPOUSAL SUPPORT, BY MAKING THE ISSUE OF SPOUSAL SUPPORT NON-MODIFIABLE, AND BY FAILING TO AWARD APPELLANT ADDITIONAL ATTORNEY FEES.

**{¶13}.** "V.  THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR IN ITS DETERMINATION OF MARITAL AND SEPARATE PROPERTY."

I.

**{¶14}.** In her First Assignment of Error, appellant contends the trial court erred in making certain property division orders in alleged contravention of the parties' written stipulations filed prior to the decree. We disagree.

**{¶15}.** As an appellate court, we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. As an appellate court construing a stipulation, we must consider the intent of the parties. *See Harris v. Salyards*, 9th Dist. Wayne No. 2546, 1990 WL 95697, citing *Beyer v. Miller* (1951), 90 Ohio App. 66, 69; 73 American Jurisprudence 2d (1974) Stipulations §7. Furthermore, we remain mindful that a trial court is not bound by concessions that are incorrect conclusions of law as opposed to stipulations of fact. *See Madison v.*

*Woodlawn*, 6th Dist. Lucas No. L-10-1131, 2010-Ohio-5650, ¶ 12, citing *State ex rel. Leis v. Bd. of Elections of Hamilton Cty.* (1971), 28 Ohio St.2d 7, 8, 274 N.E.2d 560.

{¶16}. The present dispute centers on paragraph 13 of the June 30, 2014 stipulations, which reads as follows: "As soon as U.S. Bank will allow after [Appellee] has brought the first mortgage current, [Appellant] shall refinance both the first and second mortgages, relieving [Appellee] of any further obligation thereon." *See* Appellant's Appendix No. 2. Furthermore, a second stipulation was reached by the parties on September 18, 2014, in which they agreed that " *** the stipulations previously entered into by the parties and filed on June 30, 2014, was [sic] a fair and equitable division of property in this case. Further, the parties agree that there is no need to value the property and no need for an offset." *See* Appellant's Appendix No. 3.

{¶17}. The trial court nonetheless ordered that the marital residence, which the court valued at $145,000.00, would be awarded to appellant and that the $125,371.68 debt on the residence would be her responsibility. *See* Decree at 34. Appellant maintains that pursuant to the stipulations, the marital residence should have been segregated from the remaining marital property and should not have been used as an offset in the division of the remaining property. Appellant adds that she was thereby handed the financial responsibility of immediately assuming the first mortgage and was additionally ordered to refinance both mortgages within three months.

{¶18}. "When dividing real and personal property at a divorce, a trial court has the duty to equitably divide and distribute the marital property." *R.E. v. K.E.,* 5th Dist. Muskingum No. CT 2006-0037, 2007-Ohio-4750, ¶ 43, citing R.C. 3105.171(B). In the case *sub judice*, the trial court, in carrying out this statutory duty to rule on the overall

marital property issue when drafting the final decree, was faced with the dilemma of both parties having presented evidence and arguments at trial as to the valuation of the marital home, despite the apparent stipulation that a valuation would be unnecessary and would not have to be shown in the final decree's distribution chart. The record also reveals the trial court indicated, with both attorneys indicating they had no dispute, that it would "probably" consider an offset so that appellee would be "compensated for the house." *See* Tr. at 13-14. In such circumstances, we find the trial court's duty under R.C. 3105.171(B) must prevail, and we therefore find no merit in appellant's claim of reversible error regarding the court's distribution of the marital residence and the assumption of the mortgages.

**{¶19}.** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶20}.** In her Second Assignment of Error, appellant argues the trial court erroneously failed to account for a sum of "secreted non-taxable cash income" for purposes of property division, spousal support, and awarding attorney fees. We disagree.

**{¶21}.** Appellant specifically urges the trial court failed to account for appellee's non-taxed per diem income from 2013, which totaled more than $79,000.00. Appellant also suggests appellee's handling of these funds should have been construed as financial misconduct under R.C. 3105.171(E)(4)/(5).

**{¶22}.** A per diem payment is generally defined as a daily allowance, usually to cover a person's expenses. *See Black's Law Dictionary* 1157 (7th ed. 1999). The record reveals appellee testified he used the per diem payments for living expenses and out-of-

town business expenses, and that the monies were not saved in a bank or invested. *See* Tr. at 312, 313, 342, 343, and 522. Appellee testified the per diem amounts were not recorded on his W-2 forms. *See* Tr. at 310-313. The payments, which were referenced in various discovery items and affidavits as the case progressed, ceased in January 2014 after appellant was laid off.

**{¶23}.** As an appellate court, we are not the trier of fact; instead, our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911. Upon review, we find the record supports the court's treatment of the per diem payments and the court's decision not to find the existence of financial misconduct in regard thereto.

**{¶24}.** Appellant's Second Assignment of Error is therefore overruled.

III.

**{¶25}.** In her Third Assignment of Error, appellant contends that the trial court erred in calculating appellee's income for the purposes of child support. We disagree.

**{¶26}.** In *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028, the Ohio Supreme Court determined that the abuse-of-discretion standard is the appropriate standard of review in matters concerning child support. Generally, when applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. Furthermore, as an appellate court, we are not the trier of fact. Our role is to

determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer, supra.*

{¶27}.  R.C. 3119.01(C)(7) states as follows regarding gross income for purposes of child support calculations: " 'Gross income' means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. ***."

*Payments In-kind and Per-diem Income*

{¶28}.  In the case *sub judice*, the trial court utilized annual gross incomes on the guideline worksheet as $40,078.00 for appellant and $24,336.00 for appellee.

{¶29}.  Appellant first argues that the trial court, in determining appellee's annual income,  should also have included "in-kind" payments for expenses appellee received from his mother, which appellant calculates as $1,900.00 per month. Appellant also redirects our attention to the "per diem" cash payments appellant received from his

most recent employer, totaling $79,390.00 (*see* the second assigned error, *supra*), and urges that this sum be included as income for child support purposes as well.

**{¶30}.** We have recognized that "[t]he definitions of income under R.C. 3119.01 are broad and expansive to protect the child's best interests." *Vonderhaar–Ketron v. Ketron*, 5th Dist. Fairfield No. 10 CA 22, 2010–Ohio–6593, ¶ 48, citing *Bishop v. Bishop*, 4th Dist. Scioto No. 03CA2908, 2004–Ohio–4643, ¶ 16 (additional citation omitted). However, R.C. 3119.01(C)(7)(e) states that gross income for purposes of child support does not include "nonrecurring or unsustainable income or cash flow items." While appellant called appellee's mother as a trial witness (*see* Tr. at 302-308), upon review of the record we concur with appellee's assessment that there was not enough evidence presented to compel a finding that the assistance he received from his mother was or would be regular and sustained.

**{¶31}.** Furthermore, regarding the $79,390.00 sum, while the trial court was clearly critical of appellee's failure to produce written documentation of how these per diem funds were spent, the court rejected a recognition of such funds as income on the simple basis that they were nonrecurring and no longer being received. *See* Decree at 15. Upon review, we find no abuse of discretion in the trial court's calculation of appellee's unemployment income for child support purposes on this basis.

<u>Issue of Imputed Income</u>

**{¶32}.** The statutory child-support computation worksheet includes space for the assessment of each parent's income, which is defined, for a parent who is unemployed or underemployed, as "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5)(b). Included in the definition of "potential

income" is "imputed" income as determined by a court or child-support enforcement agency. R.C. 3119.01(C)(11). Among the factors a trial court should consider are the availability of employment in the geographic area in which the parent resides (R.C. 3119.01(C)(11)(a)(iv)), the prevailing wage and salary levels in the geographic area in which the parent resides (R.C. 3119.01(C)(11)(a)(v)), and the parent's special skills and training (R.C. 3119.01(C)(11)(a)(vi)). In the case sub judice, the trial court found the presentation of evidence on such factors to be too inadequate to justify the imputation of income as to appellee. We are unpersuaded upon review that the court's decision in this regard was unreasonable, arbitrary, or unconscionable.

{¶33}. Appellant's Third Assignment of Error is therefore overruled.

IV.

{¶34}. In her Fourth Assignment of Error, appellant contends the trial court abused its discretion in awarding no spousal support and in declining to reserve jurisdiction to modify spousal support in the future. We disagree.[1]

{¶35}. A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. *See Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore, supra.*

{¶36}. R.C. 3105.18(C)(1)(a) through (n) provides the factors that a trial court is to review in determining a spousal support obligation:

---

[1]  Appellant's assigned error indicates she is also challenging the trial court's decision not to award her additional attorney fees; however, this issue is not specifically addressed in her arguments. *See* App.R. 16(A)(7).

{¶37}. "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

{¶38}. "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."

{¶39}. While R.C. 3105.18(C)(1), *supra,* does set forth fourteen factors the trial court must consider, if the court does not specifically address each factor in its order, a reviewing court will presume each factor was considered, absent evidence to the contrary. *Carroll v. Carroll,* 5th Dist. Delaware No. 2004–CAF–05035, 2004-Ohio-6710, 2004 WL 2891928, ¶ 28, citing *Watkins v. Watkins,* 5th Dist. Muskingum No. CT 2001–0066, 2002-Ohio-4237, 2002 WL 1902876 (additional citations omitted).

{¶40}. Finally, the decision of whether to retain jurisdiction to modify spousal support post-decree is a matter within the domestic relations court's discretion. *Smith v. Smith*, 6th Dist. Lucas No. L–98–1027, 1998 WL 904941, citing *Johnson v. Johnson* (1993), 88 Ohio App.3d 329, 331, 623 N.E.2d 1294. However, this Court has previously held that a trial court errs in reserving jurisdiction over the issue of spousal support after finding that spousal support was not appropriate or reasonable. *See Vona v. Vona,* 5th Dist. Stark No. 00–CA–00040, 2001 WL 109368; *Long v. Long*, 5th Dist. Stark No. 1999CA00388, 2000 WL 1027285.

{¶41}. In the case *sub judice*, the trial court engaged in a thorough four-page analysis of the issue of spousal support, indicating the weight it was giving to each statutory factor, ultimately concluding no spousal support would be awarded. *See* Decree at 36-39. It appears the trial court found it important that the duration of the marriage was relatively short, that the parties are relatively young and in good health, that appellant was earning more than appellee and had made more money than he had earned during the first two years of the marriage, and that the greater income appellee had earned in prior years was due in large part to his working outside of the geographical area and putting in long hours. *See* Decree at 39.

{¶42}. Upon review of the record, we are unpersuaded the trial court abused its discretion in making no award of spousal support to appellant under the facts and circumstances of this case, and we find no reversible error in the decision not to retain jurisdiction on the issue.

{¶43}. Appellant's Fourth Assignment of Error is therefore overruled.

V.

{¶44}. In her Fifth Assignment of Error, appellant argues that the trial court abused its discretion in classifying certain property as marital or separate. We disagree.

{¶45}. Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall *** determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600, 614, 709 N.E.2d 208. The characterization of property as separate or marital is a mixed question of law and fact, and the characterization must be supported by sufficient, credible evidence. *Chase–Carey v. Carey*, 5th Dist. Coshocton No. 99CA1, 1999 WL 770172. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. *See* R.C. 3105.171(D). We reiterate that as an appellate court, we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry, supra.*

*Life Insurance Policy re: C.M.C.*

**{¶46}.**  Appellant first challenges the trial court's determination that an American Life Insurance Co.'s policy insuring the life of the parties' son, C.M.C., was marital property. The trial court first found that "[e]vidence was presented that [the insurance policy] property may be comprised of both separate and marital property." Decree at 32. The court proceeded to determine that the separate nature of the policy "has been lost due to co-mingling with marital funds and the inability to trace the separate property." *Id.* at 33.

**{¶47}.**  Appellant directs us to her trial testimony that she had established this policy in 2006, prior to the parties' marriage. *See* Tr. at 414. As noted in our recitation of facts, the parties were married in October 2007, appellee adopted C.M.C. in November 2010, and the parties were separated in January 2012. Appellant maintains that the testimony would only show that appellant had paid all of the premiums since its inception (*see* Tr. at 414, 415), that appellee had little or no knowledge of the status of policy (*see* Tr. at 336), and that appellee apparently never made a premium payment on the policy out of his separate bank accounts.

**{¶48}.**  Nonetheless, upon review, we are unpersuaded that such arrangements by the parties as to the maintenance of the policy in question would outweigh the trial court's sound conclusion that an "unknown quantity of marital funds" were applied to the policy after the marriage and that traceability as separate property was lost. *See* Decree at 32-33.

**{¶49}.**  We hold the trial court therefore did not abuse its discretion in making its determination that the American Life Insurance policy was marital property.

### *Appellant's Student Loan Debt*

**{¶50}.** Appellant also challenges the trial court's classification of her student loans of approximately $15,000.00, incurred during the marriage, as her separate debt.[2]

**{¶51}.** We recognize that although Ohio's divorce statutes do not generally articulate debt as an element of marital and separate property, the rules concerning marital assets are usually applied to marital and separate debt as well. *See Vergitz v. Vergitz,* 7th Dist. Jefferson No. 05 JE 52, 2007–Ohio–1395, ¶ 12.

**{¶52}.** In the case *sub judice*, there is no dispute that the student loans were incurred during the marriage and that appellant was still pursuing her degree at the time of the divorce trial, although appellant presently claims her trial counsel was not afforded an opportunity to ask her questions on this issue via redirect examination. Nonetheless, as in our decision in *Vonderhaar–Ketron v. Ketron,* 5th Dist. Fairfield No. 10CA22, 2010–Ohio–6593, appellee in this instance "never saw the economic fruition" of appellant's college loan obligations. *Id.* at ¶ 36. We find the trial court's treatment of the student loans as separate property was not arbitrary, unreasonable or unconscionable under the circumstances presented.

---

[2]   The trial court found that appellee had also incurred student loan debt during the marriage, although this appears to have been factually incorrect. In any case, appellee's purported student loan debt was found to be his separate obligation.

{¶53}.  Appellant's Fifth Assignment of Error is therefore overruled.

{¶54}.  For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Licking County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., concurs in part and dissents in part.

Farmer, J., concurs in part and dissents in part.

_____
HON. JOHN W. WISE

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

JWW/d 0827

*Hoffman, P.J., concurring in part and dissenting in part*

{¶55} I concur in the majority's analysis and disposition of Appellant's first four assignments of error. I further concur in the majority's analysis and disposition of Appellant's fifth assignment of error as it relates to the classification of the life insurance policy as marital property. However, I respectfully dissent from the majority's conclusion Appellant's student loans were properly classified as her separate property.

{¶56} I find the student loans were incurred during the marriage and, at the time, intended for the benefit of the marriage. The fact Appellee "never saw the economic fruition" of Appellant's additional education may impact the equitable distribution of the debt, but it does not serve to transform the nature of debt from being marital to separate.

*Farmer, J., dissents in part*

{¶57} I respectfully dissent with the majority's opinion in Assignment of Error V regarding the life insurance issue.

{¶58} The trial court properly acknowledged that part of the life insurance policy on appellant's son was separate property.  However, as for the payments made and the cash surrender value of the policy prior to the parties' marriage, I would find those amounts to be separate property; therefore, they should have been determined to be appellant's separate property.