[Cite as *Shupe v. Shupe*, 2017-Ohio-5864.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| TERRY K. SHUPE | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| EDWARD SHUPE | : | Case No. 17CA2 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
                              Pleas, Domestic Relations Division,
                              Case No. 2013-DIV-1149



JUDGMENT:                     Affirmed/Reversed in Part and
                              Remanded




DATE OF JUDGMENT:             July 17, 2017




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CHARLES D. LYNCH                          GEORGE R. KEYSER
Six West Third Street                     44 Park Avenue West
Suite 200                                 Suite 202
Mansfield, OH  44902                      Mansfield, OH  44902

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant, Edward Shupe, appeals the December 16, 2016 final judgment entry decree of divorce of the Court of Common Pleas of Richland County, Ohio, Domestic Relations Division. Plaintiff-Appellee is Terry Shupe.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 14, 1989, appellant and appellee were married. Two children were born as issue of the marriage. On November 12, 2013, appellee filed a complaint for divorce. There are no issues involving the minor children.

{¶ 3} Hearings on the division of the parties' real and personal property were held before a magistrate on June 8, August 10, and 18, and November 4, 2015. By decision filed January 8, 2016, the magistrate divided the parties' property. Both parties filed objections. By judgment entry filed November 23, 2016, the trial court denied appellant's objections, and adopted the magistrate's decision with modifications. A final judgment entry decree of divorce was filed on December 16, 2016.

{¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 5} "THE TRIAL COURT ERRED BY ORDERING APPELLANT TO PAY ONE-HALF OF APPELLEE'S ATTORNEY FEES DURING THE ENTIRE TIME HE WAS ACTING AS HIS OWN ATTORNEY."

II

{¶ 6} "THE TRIAL COURT ERRED IN ITS DETERMINATION THAT APPELLANT SHALL MAINTAIN OWNERSHIP AGAINST HIS EXPRESS WISHES AND

BY ITS ACCEPTANCE OF THE VALUATION OF THE 2008 TOYOTA TUNDRA BY FRANK FOTI WHICH WAS NOT SUPPORTED BY COMPETENT AND CREDIABLE (SIC) EVIDENCE."

### III

{¶ 7}   "THE TRIAL COURT ERRED WHEN IT FOUND THAT THE TWO CHECKS WRITTEN TO THE PARTIES IN THE AMOUNT OF $13,000 EACH BY APPELLEE'S GRANDFATHER AND THEN DEPOSITED INTO AN AMERIPRISE ANNUITY ACCOUNT IN APPELLEE'S NAME ONLY WAS A GIFT TO APPELLEE AND THEREFORE WAS HER SEPARATYE (SIC) PROPERTY."

### IV

{¶ 8}   "THE TRIAL COURT ERRED WHEN IT CHARGED APPELLANT WITH THE FULL $21,000 HE RECEIVED FROM THE SALE OF THE PARTIES' BOAT PRIOR TO THE SEPARATION OF THE PARTIES AND WHEN IT ONLY GAVE A CREDIT OF $9,459 FOR THE WRONGFUL WITHDRAWALS MADE BY APPELLEE."

### V

{¶ 9}   "THE TRIAL COURT ERRED BY NOT MAKING AN EQUAL DIVISION OF FEDERAL INCOME TAX RETURNS FOR THE 2012, 2013 AND 2014 TAX YEARS."

### VI

{¶ 10} "THE TRIAL COURT ERRED BY ORDERING THE DELAYED SALE OF THREE (3) PARCELS OF REAL ESTATE OWNED BY THE PARTIES UNTIL THE YOUNGEST CHILD WAS EMANCIPATED FOR CHILD SUPPORT PURPOSES."

VII

{¶ 11} "THE TRIAL COURT ERRED IN ITS DETERMINATION TO DENY APPELLANT'S REQUEST FOR ONE-HALF OF THE PHOTOGRAPHS OF THE FAMILY AND CHILDREN."

VIII

{¶ 12} "THE TRIAL COURT ERRED IN ITS AWARD OF THE GO-CARTS AND THE ATV 4 WHEELERS TO THE APPELLEE WHEN THE APPELLEE HAD NOT REQUESTED THAT SHE BE AWARDED THOSE ITEMS."

IX

{¶ 13} "THE TRIAL COURT ERRED WHEN HE WAS NOT GIVEN CREDIT FOR HIS PAYMENT ABOVE AND BEYOND THE MINIMUM PAYMENTS ON THE CHECK LINE ACCOUNTS ORDERED UNDER THE TEMPORARY ORDERS."

STANDARDS OF REVIEW, MARITAL AND SEPARATE PROPERTY

{¶ 14} As stated by this court in *Cooper v. Cooper,* 5th Dist. Licking No. 14 CA 100, 2015-Ohio-4048, ¶ 45:

Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property.  In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section."  The party to a divorce action seeking to establish that an asset or portion of an asset is separate

property, rather than marital property, has the burden of proof by a preponderance of evidence. *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600, 614, 709 N.E.2d 208. The characterization of property as separate or marital is a mixed question of law and fact, and the characterization must be supported by sufficient, credible evidence. *Chase-Carey v. Carey,* 5th Dist. Coshocton No. 99CA1, 1999 WL 770172. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. *See* R.C. 3105.171(D). We reiterate that as an appellate court, we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry* [*v. Cherry,* 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981)]*, supra.*

{¶ 15} However, when a party claims the separate property is a gift, the burden becomes clear and convincing evidence [R.C. 3105.171(A)(6)(a)(vii)]:

"Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

{¶ 16} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477. Sufficiency of the evidence "is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 17} R.C. 3105.171(A)(3)(a) defines "marital property" as following in pertinent part:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage.

{¶ 18} R.C. 3105.171(C)(1) states:

Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal.  If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable.  In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.

{¶ 19} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 20} We will address the assignments of error under the applicable standards and the cited statutes.

I

{¶ 21} Appellant claims the trial court erred in ordering him to pay $4,790.00 for one-half of appellee's attorney fees during the time between July 31, 2014 and March 3, 2015, when he was not represented by counsel.  We agree in part.

{¶ 22} R.C. 3105.73(A) states the following:

In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of

reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶ 23} As explained by this court in *Dotts v. Schaefer,* 5th Dist. Tuscarawas No. 2014 AP 06 0022, 2015-Ohio-782, ¶ 17:

The resolution of a request for attorney fees is vested in the sound discretion of the trial court and will not be overturned upon review absent a showing of an abuse of discretion. *Bagnola v. Bagnola,* 5th Dist. Stark No. 2004CA00151, 2004-Ohio-7286 [2004 WL 3090245], ¶ 36. While the trial court has discretion in determining the amount of attorney fees, the court must base its decision on evidence showing the reasonableness of the time spent on the matter and the hourly rate. *Id.* Where the amount of an attorney's time and work is evident to the trier of fact, an award of attorney fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion. *Hawk v. Hawk,* 5th Dist. Tuscarawas No. 2002AP040024, 2002-Ohio-4384 [2002 WL 1969845], ¶ 28.

{¶ 24} In her post-trial brief filed November 25, 2015, appellee at 12-13 requested an award of attorney fees, arguing appellant failed to provide requested discovery forcing her to file a motion to compel, and appellant's "behavior in the final hearing, among other hearings, has led to an unnecessary amount of time being exhausted on this case that would have otherwise never have been utilized." Appellee concluded by requesting attorney fees incurred while appellant was a pro se litigant from July 31, 2014 to March 3, 2015. This time period had nothing to do with appellant's "behavior in the final hearing, among other hearings" other than the hearing on the motion to compel held on February 11, 2015. The trial court granted appellee's motion to compel on February 13, 2015.

{¶ 25} In her January 8, 2016 decision, the magistrate at 30 found appellant did not comply with discovery requests, resulting in appellee having to file a motion to compel and incur "additional attorney's fees associated with the preparation and prosecution of that motion." The magistrate at 31 found it was equitable to award appellee one-half of the "reasonable attorney's fees" as evidenced in Plaintiff's Exhibit 6, and awarded appellee $4,790.00.

{¶ 26} In his objections filed January 22, 2016 at 4, appellant objected to this amount, noting the combined time for the two hearings on the issue was less than four hours. In his July 8, 2016 amended supplementary objections, appellant argued the following at 6:

> In any event the amount of work that Attorney Naumoff spent during that time Defendant was not represented was not apparent. The

Magistrate has an idea of how long the hearing lasted on February 11, 2015. But the Magistrate cannot know about work performed out of court. There was no stipulation or evidence that the work was done, that the work was necessary because of Defendant's failure to abide by court order, or that the charges were reasonable.

The Plaintiff could have had another Attorney review the work and testify concerning the reasonableness and necessity of the work. Counsel for Plaintiff submitted a bill without explanation from herself or another Attorney who could have testified as an expert.

{¶ 27} In her January 29, 2016 response to appellant's objections, appellee stated at 2: "The evidence presented will show this Court that Defendant was difficult, non-compliant, and filing frivolous motions while being a pro se litigant."

{¶ 28} In its November 23, 2016 judgment entry denying the objection, the trial court stated the following at 2:

The amount of work and time spent by Plaintiff's counsel during the time Mr. Shupe was unrepresented and during the pendency of the divorce action was apparent as set forth in Plaintiff's Exhibit 6. Two hundred dollars ($200) per hour is a reasonable charge. While it would have been better to have had expert testimony concerning the reasonableness and necessity of Attorney Naumoff's work, the Court finds that Attorney Naumoff's fees are reasonable and were necessary.

Defendant's argument is not well-taken. The Court further finds that the Magistrate could have properly applied Ohio Revised Code section 3105.73 to the facts and found it equitable to award Plaintiff attorney's fees in the amount of $17,075.

{¶ 29} A review of the record from July 31, 2104 to March 3, 2015 indicates appellant filed the following pro se motions (followed with disposition):

{¶ 30} 1) August 15, 2104 – Motion to Modify Parenting Time. Failed to serve guardian ad litem.

{¶ 31} 2) September 16, 2014 – Refiled Motion to Modify Parenting Time. Motion granted on January 15, 2015.

{¶ 32} 3) November 21, 2014 – Motion to Compel. Motion denied on December 30, 2014, although appellee was instructed to produce and provide specific documents to appellant.

{¶ 33} 4) February 3, 2015 – Motion to Modify Parenting Time. Motion granted on February 13, 2015.

{¶ 34} 5) February 11, 2015 – Motion to Compel Absolute Auction. Subsequently withdrawn at the June 8, 2015 hearing. T. at 31.

{¶ 35} In reviewing this list, we do not find appellant filed "frivolous motions while being a pro se litigant." In reading the decisions of both the magistrate and the trial court, the attorney fees were awarded to appellee because of appellant's conduct surrounding the motion to compel.

{¶ 36} We find the trial court did not abuse its discretion in awarding attorney fees for the time spent on the preparation and prosecution of the motion to compel including hearing time, as well as the time spent on attempting to resolve the discovery matter via emails to appellant on December 19, 2014, and January 9, 13, and 20, 2015, as outlined in the motion to compel filed January 21, 2015. However, we find the trial court abused its discretion in awarding attorney fees to appellee for the entire time appellant was pro se.

{¶ 37} A review of Plaintiff's Exhibit 6 does not reveal what charges are attributable to the discovery issue and the motion to compel. We note, as did the trial court, no testimony was presented as to the reasonableness of the charges. However, appellant did not object to the admission of the exhibit nor request a hearing on the reasonableness of the fees. T. at 166-168, 187-188.

{¶ 38} Upon review, we remand this issue to the trial court to determine appellee's attorney fees incurred because of the discovery issue/motion to compel and award appellee that amount.

{¶ 39} Assignment of Error I is granted in part.

II

{¶ 40} Appellant claims the trial court erred in awarding him the Toyota Tundra against his express wishes and valuing the vehicle at $21,550.00. We agree in part.

{¶ 41} The 2008 Tundra was purchased new in 2009 for $26,000.00. T. at 44-45. In March 2014, the parties' agreed appraiser, Frank Foti, appraised the vehicle at $21,550.00. T. at 107; Plaintiff's Exhibit 2. He testified he used the NADA guide to

appraise the Tundra and it took him ten minutes to appraise the vehicle. T. at 107, 115. He did not note any "detractions." T. at 111.

{¶ 42} A second appraisal was conducted by Michael Augustine in February 2015. T. at 120; Defendant's Exhibit W. Mr. Augustine appraised the vehicle at $12,400.00. *Id.* He used the NADA guide and took into consideration the repairs that were needed on the vehicle. *Id.* Those repairs included dents to the front and rear bumpers, removal of the lettering, replacement of the right rear mirror, tailgate dent damage, loss of paint in the bed, and cleaning of the interior. T. at 120-121.

{¶ 43} A third appraisal was conducted by David Paone in June 2015. T. at 175-176; Defendant's Exhibit J. Mr. Paone appraised the vehicle at $8,500.00. T. at 175. He noted the vehicle was in "rough" condition, needing paint, tires, interior work, and front and rear bumper repairs to be in a sellable condition. T. at 176. The vehicle "needs body repair, the interior is rough, the tires are bad, the passenger mirror is broken, the front and rear bumpers are damaged, there is rust in the bed and tailgate, the brakes need replaced, the vehicle needs repainted, and that it is missing the original front wheel." *Id.*

{¶ 44} A fourth appraisal was conducted by Chris Theiss in August 2015. T. at 377; Defendant's Exhibit XXX. Mr. Theiss appraised the vehicle at $7,200.00. T. at 376. He used the NADA guide to start and worked from there. T. at 375. He noted the vehicle was in "horrible" condition and since it was used as a work truck, it was "well used." T. at 378.

{¶ 45} In her January 8, 2016 decision, the magistrate at 14-15 accepted Mr. Foti's appraisal, stating it was based "on his NADA research and inspection of the

vehicle," and noting he "did not note body damage or wear and tear to the interior and exterior of the vehicle. He did not notice that it was missing two hubcaps and that one wheel had been replaced." The magistrate also stated the "value was determined by Frank Foti whom the parties agreed to use to appraise the property. The Court further finds that Defendant 'abused' the vehicle and intentionally caused a decrease in the value of the same."

{¶ 46} In his objections filed January 22, 2016, appellant objected to this valuation.

{¶ 47} In its November 23, 2016 judgment entry denying the objection, the trial court stated the following at 1-2:

> Defendant is not entitled to create the value of a piece of property by intentionally, recklessly or neglectfully causing a decrease in the value of the same; and then performing appraisal after appraisal until the value of an item suits his purposes. The Magistrate properly found that the 2008 Toyota Tundra has a value of $21,550. In addition, as argued by Plaintiff, while one of the witnesses testified that the truck 'could' need to be repainted if the business sticker were removed, that is a moot point because Defendant continues to use it as his business truck.

{¶ 48} Although appellant stipulated to Mr. Foti as the parties' appraiser, he did not stipulate or agree to his valuation. February 11, 2015 T. at 30-31; T. at 499. Appellant opined Mr. Foti "did a very incompetent, incomplete job." T. at 503. He was

present when Mr. Foti conducted the appraisal.  T. at 500.  Appellant testified Mr. Foti "was never within fifty feet of my truck," he never walked around the truck, he did not look inside it, he did not drive it, he did not note its condition, he did not write the VIN number down, and he did not certify its mileage.  T. at 502.  Instead, Mr. Foti relied on appellant to tell him the mileage.  *Id.*  Appellant described the truck as "a work truck.  It's an eight-year-old, 92,000 mile, beat up, base model, work truck."  T. at 503.

{¶ 49} Mr. Foti testified he looked at the vehicle and looked inside to obtain the mileage, however, when asked if appellant told him the mileage, he admitted that yes, "[i]t is possible."  T. at 111.  He had no idea of the interior color.  *Id.*  He did not notice anything about the condition of the vehicle because he did not have anything in his notes to indicate a "detraction," including the fact that it had lettering on it advertising "Bellville Construction."  T. at 111-112.  He admitted there would be an expense involved with removing the lettering.  T. at 116-117.  He stated it took him ten minutes to appraise the vehicle.  T. at 115.

{¶ 50} The trial court had before it four appraisals, ranging from $21,550.00 to $7,200.00, and accepted the $21,550.00 appraisal.  It is hard to fathom how a 2008 Toyota Tundra pickup truck used as a work vehicle in a construction business could have depreciated in value by only $4,450.00 by 2014.  Mr. Foti admitted to spending ten minutes on the appraisal.  He made no notes on the condition of the vehicle even though it contained lettering that he admitted would involve an expense to remove.  He more than likely did not even look inside the vehicle, as he admitted it was possible that appellant just told him the mileage without verifying the mileage for himself.

{¶ 51} There is a great disparity between the first appraisal of $21,550.00 and the last appraisal of $7,200.00. Given the testimony presented, we find accepting the first appraisal of $21,550.00 to be an abuse of discretion. We note the $7,200.00 appraisal was conducted in August 2015, after the hearing commenced in June 2015. Rejecting these two appraisals leaves the February 2015 appraisal of $12,400.00 and the June 2015 appraisal of $8,500.00. The February 2015 appraisal was conducted less than a year after the first appraisal, and gave appellee the opportunity to obtain her own appraisal of the vehicle prior to the commencement of the June 8, 2015 hearing if she so chose, which she did not. We hereby order the trial court to adopt the $12,400.00 valuation for the 2008 Toyota Tundra.

{¶ 52} We do not find the trial court abused its discretion in awarding the Tundra to appellant "against his express wishes." If appellant does not want the vehicle, he is free to sell it and pocket the money. If appellant did indeed "intentionally, recklessly or neglectfully" cause a decrease in the value of the vehicle as noted by the trial court, his efforts will be realized when he goes to sell the vehicle.

{¶ 53} Assignment of Error II is granted in part.

III

{¶ 54} Appellant claims the trial court erred in determining two $13,000.00 checks from appellee's grandfather were gifts to appellee and were her separate property. We agree.

{¶ 55} Appellee testified her grandfather gifted money "at various different times. Some of it has been for the kids. Some of it was to me. There was one time that he gifted us $10,000 and I have a statement showing that it was to put towards the

mortgage on the house" in 2001. T. at 140-141, 255. Appellee had an Ameriprise annuity account in her name only with a balance of $7,495.16. T. at 160-161; Plaintiff's Exhibit 5. Appellee believed the account was not a joint asset because the money therein was gifted to her by her grandfather. T. at 161. In 2007, appellee's grandfather wrote two separate checks for $13,000.00 each, one made out to appellee and one made payable to the order of appellant. T. at 253-254, 591-592. The two checks were placed into the Ameriprise account. T. at 254. Appellee explained that her grandfather wrote two separate checks "because of tax purposes." T. at 161. Her grandfather was told to "pass out" some of his money "so that his death tax wouldn't be so high." T. at 254. She withdrew $10,000.00 out of the account in March 2012 and another $7,000.00 in June/July 2012 to help pay bills. T. at 254, 285-286. Appellant moved out of the marital residence on July 27, 2012. T. at 27-28, 229. She withdrew $6,300.00 out of the account in 2013 and $1,000.00 in 2014. T. at 227-228, 240-241, 254; Defendant's Exhibits E and G.

{¶ 56} Appellant testified he believed the Ameriprise account to be a joint account, although he admitted his name was not on it. T. at 63. He explained the financial advisor told them the way the account was set up, it could only be in one name so they put it in appellee's name. T. at 63-64, 592. They opened the account together with the two $13,000.00 checks. T. at 468. Appellant considered his check to be a gift to him from appellee's grandfather. *Id.* Even though he placed his check in the annuity containing appellee's name only, he did not intend for the check to be a gift to her, but "an equal partnership." T. at 469, 592. Appellant would participate in meetings with the financial advisor "about the state of the account, how it was performing, where we

wanted to shift and move money for better performance and that went on for years and years." T. at 469.

{¶ 57} In her decision filed January 8, 2016, the magistrate at 25 determined appellee "established by clear and convincing evidence that the funds in the Ameriprise Annuity account were gifted to her by her grandfather." The magistrate noted that while appellant argued the checks were intended as gifts to both of them, "the Court does not find this claim to be credible based on its own observation of the parties' testimony and demeanor in the courtroom." *Id.* The magistrate explained the following (*Id.*):

> With respect to the funds in the Ameriprise Annuity, although there was evidence that Plaintiff's grandfather wrote Plaintiff and Defendant each a check, the Court finds Plaintiff's testimony that this was done solely for tax reasons to be credible. The funds from both checks were deposited into the annuity account established only in Plaintiff's name. Defendant claimed this was because they were not permitted to have two names on the account. If that were the case and the funds were truly intended as a gift for him, Defendant could have set up his own annuity account to deposit the check in his name. He did not do so.

{¶ 58} In his January 22, 2016 objections at 6, appellant objected to this determination, arguing the issuance of two separate checks "for the purpose of not having to file a gift tax return does not negate the presumption that the property was marital."

{¶ 59} In its November 23, 2016 judgment entry denying the objection, the trial court found appellee's explanation to be credible and appellant's not credible. Further, the trial court stated the following at 3:

In addition, as Plaintiff argues, by Defendant's own actions of depositing the check in his name into an annuity in Plaintiff's name only, he demonstrates both the intent of Plaintiff's grandfather, and his own understanding that the gift was intended to be Plaintiff's. The Magistrate properly found that Plaintiff proved, by clear and convincing evidence, that the checks were a gift from her grandfather to her and that the Ameriprise annuity account is her separate property.

{¶ 60} We acknowledge a trial court is vested with determining the credibility of the witnesses. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). However, the standard is clear and convincing evidence. We do not find the trial court had sufficient evidence before it to satisfy the requisite degree of proof of clear and convincing evidence: a firm belief or conviction that the grandfather's gifts of a $13,000.00 check to appellee and a $13,000.00 check made payable to appellant were intended to be appellee's separate property. The grandfather had a history of gifting money to appellee that was intended to be used as marital property e.g. $10,000.00 toward the mortgage of the marital real estate.

{¶ 61} Upon review, we find the trial court erred in designating the two $13,000.00 checks to be appellee's separate property. This matter is remanded to the

trial court for a determination on the division of the monies deposited into ($26,000.00) and remaining ($7,495.16) in the Ameriprise account given that withdrawals were made by appellee to pay living expenses before ($17,000.00) and after ($7,300.00) appellant moved out of the marital residence.

{¶ 62}  Assignment of Error III is granted.

IV

{¶ 63} Appellant claims the trial court erred in assigning him with the full $21,000.00 he received from selling the parties' boat prior to moving out, especially since appellee was not held responsible for borrowing against the parties' line of credit prior to the filing of the complaint.  We disagree.

{¶ 64} Appellant acknowledged that he sold the boat in July 2012, about a month before he left the marital residence.  T. at 428-429.  At the time he filled out his financial affidavit in December 2013 a month after the divorce complaint was filed, he thought he had approximately $11,100.00 left from the sale.  T. at 429.  He placed $2,000.00 into the bank to cover overdrawn living expenses, and then deposited $8,100.00 into a bank account and kept $1,000.00 for emergencies.  T. at 429, 432.  In the end, "it all got used for basically living expenses."  T. at 428, 432-433.

{¶ 65} In her decision filed January 8, 2016, the magistrate at 26-27 determined the proceeds of the sale of the boat ($21,000.00) to be marital property, and then at 28, assigned $9,100.00 to appellant representing the remaining proceeds from the sale of the boat, noting appellant had $11,100.00 at the time of his financial affidavit and then used $2,000.00 to pay living expenses.

{¶ 66} In her January 29, 2016 objections, appellee objected to this amount, arguing appellant should have been assigned the entire $21,000.00.  Appellant did not respond to this objection.

{¶ 67} In its November 23, 2016 judgment entry granting the objection, the trial court stated at 7: "Plaintiff's objection is well-taken and the entire $21,000 is allocated to Defendant," without explanation.

{¶ 68} Appellant sold the boat, a marital asset, prior to moving out of the home. Instead of giving appellee half of the proceeds ($10,500.00) or paying down marital debt, appellant kept the entire amount and spent the money on his own living expenses. In his post-trial brief file November 24, 2015, appellant acknowledged at 10 the sum of $21,000.00 for selling the boat should be charged to him.

{¶ 69} Upon review, we do not find the trial court abused its discretion in allocating the entire $21,000.00 to appellant.

{¶ 70} Appellant argues it is unfair to burden him with the entire $21,000.00 amount that he used for living expenses when the trial court did not assign to appellee an amount for her improper payments on the home equity line of credit that she used for her living expenses.  Appellant's Brief at 19.  Appellant argues: "It was inequitable for the court to use the date of separation (July 2012) for the valuation date for the sale of the boat proceeds and the date of filing (Dec 18, 2013) for the date to determine the beginning date to evaluate her wrongful withdrawal of principal payments for the equity line of credit." *Id.*

{¶ 71} In the temporary orders filed December 18, 2013, appellee was ordered to pay "[a]ll expenses associated with the marital residence."  Appellee testified after

appellant moved out, she made payments on the home equity line of credit from a checking account, then withdrew the principal amount from the home equity line of credit and deposited it back into the checking account, paying nothing but interest on the line of credit. T. at 142, 242-243.

{¶ 72} In her decision filed January 8, 2016, the magistrate at 22 determined: "From December 18, 2013, through the date of the final hearing, Defendant proved that Plaintiff transferred the sum of $9,459 from the parties' line of credit. The amount of the payment to be made by Defendant to Plaintiff to equalize the property division is reduced by that amount."

{¶ 73} In his July 8, 2016 amended supplemental objections at 11, appellant argued "he should have been granted a credit from withdrawals of principal that Plaintiff made from July 2012 to the final hearing of this case. That sum is an (sic) excess of $17,800.00."

{¶ 74} In its November 23, 2016 judgment entry denying the objection, the trial court found the following at 4-5:

Defendant next objects to the Magistrate using the date of temporary orders as the beginning date for determining Plaintiff's withdrawal of principal from the line of credit. He believes that because he is being held responsible for selling marital property prior to the filing of the complaint, Plaintiff should be responsible for borrowing against the line of credit prior to the filing of the complaint. Defendant's objection is not well-taken. As Plaintiff argues, prior to the temporary orders, she paid the

entire monthly amount due on the equity line because that was required, and then withdrew everything except the monthly interest. She did this because she felt personally compelled to pay the interest on the loan when Defendant left the marital residence, and many financial commitments fell solely to her. Plaintiff did not want the parties' credit to be harmed.

{¶ 75} Appellee was not required to make payments on the home equity line of credit until ordered to do so by the trial court in the temporary orders filed December 18, 2013. Appellant in effect is arguing appellee should have made payments on the home equity line of credit, a marital debt, prior to the temporary orders, although he chose not to do so with the proceeds from the sale of the marital boat. Because appellee made improper payments after the temporary orders, the trial court correctly credited appellant with the proper amount.

{¶ 76} Upon review, we find the trial court did not abuse its discretion in using the date of the temporary orders for the valuation date of the improper payments.

{¶ 77} Assignment of Error IV is denied.

V

{¶ 78} Appellant claims the trial court erred in not making an equitable division of the parties' federal income tax refunds for 2012, 2013, and 2014. We disagree.

{¶ 79} During the hearing, appellant testified he received a total of $4,179.00 in tax refunds for the three years and appellee received $13,165.00. T. at 474; Defendant's Exhibit HH.

{¶ 80} There is no disposition in the magistrate's decision in regard to the tax refunds.

{¶ 81} In his July 8, 2016 amended supplemental objections at 8, appellant objected, arguing the magistrate erred in not making an equitable division of the tax refunds.

{¶ 82} In its November 23, 2016 judgment entry denying the objection, the trial court stated the following at 6:

The Court finds that it would be inequitable to divide the tax refunds equally between the parties and, therefore, divides the refunds equitably. As Plaintiff argues, Defendant was found to be voluntarily unemployed/underemployed by the Magistrate. As such, an equal division of the 2012, 2013 and 2014 tax refunds would be inequitable. Plaintiff is awarded the tax refunds that she received for the tax years 2012, 2013 and 2014; and Defendant is awarded the tax refunds he received for the same tax years.

{¶ 83} We note appellant did not contest the finding of being voluntarily unemployed/underemployed.

{¶ 84} Upon review, we find the trial court did not abuse its discretion in its allocation of the tax refunds for the years 2012, 2013, and 2014.

{¶ 85} Assignment of Error V is denied.

VI

{¶ 86} Appellant claims the trial court erred in delaying the sale of the three parcels of real estate owned by the parties until the youngest child was emancipated. We agree in part.

{¶ 87} The parties own three parcels of real estate; one is a one acre parcel containing the home and a storage barn, the second is a one acre vacant parcel, and the third is a half-acre parcel containing a shop building and a gravel parking area. Appellant's appraiser, Ralph Brown, appraised the property in November 2012 and assigned a value of $245,000.00 for the whole. T. at 308, 311, 329; Defendant's Exhibit ZZZ. Appellee's appraiser, Sarah Howard, appraised the property in April 2015 and assigned a value of $195,000.00 for the whole. T. at 73, 95; Plaintiff's Exhibit 1. At appellant's request, a third appraisal was conducted by Stan Baumberger in May 2015. T. at 346. Mr. Baumberger appraised all three parcels separately. T. at 344-345. He explained they have separate legal descriptions and are surveyed separately. T. at 345. He appraised the parcel with the home and storage barn at $214,000.00, the parcel with the shop building at $65,000.00, and the vacant parcel at $11,000.00. T. at 351, 354, 355; Defendant's Exhibit DD. In her decision filed January 8, 2016, the magistrate at 29 found "Mr. Baumberger's appraisal most persuasive."

{¶ 88} Appellee desired to retain the parcels because it is where the children grew up and one child is still living in the home. T. at 133-134. Appellant desired to retain the parcels because he built the home, barn, and shop himself, all "built for a purpose and it was built for a reason and I need that." T. at 26, 461. He stated he was ready, willing, and able to purchase the parcels with the financial backing from his

brother. T. at 199, 204, 460, 465. In fact, appellant was willing to pay the full values of the parcels as appraised in the Baumberger appraisal for a total amount of $290,000.00. T. at 460-461, 527. He felt the parcels were worth the amounts, and not having access to the shop building was "crippling" his business. T. at 461. Appellant used the shop between July 2012 and November 2013, after which appellee changed the locks on the shop and he was denied access. T. at 20-21, 496-497, 571-572. He admitted to taking tools from the shop and selling them to pay bills; however, he "sold tools that I didn't need that weren't critical and I kept the core stuff." T. at 531, 533-534, 570, 572. He was currently renting shop space from his father. T. at 21-22. He continued to work the home shows and set up a display at the Bellville Fair to drum up business, but was unable to do the work "because I don't have the facilities." T. at 466-467, 576. He stated the loss of his shop "has had a substantial impact on my business." T. at 508. Appellant wanted the shop building to "earn a living, to build things, construct things, store things, have a business headquarters." T. at 464-465. He stated the parcels were "crucial to being able to provide for myself and for her." T. at 528. Appellee was using the shop building for added income, renting it out to family and third-parties for storage purposes. T. at 263.

{¶ 89} In her decision filed January 8, 2016, the magistrate at 28-29 found appellant's claimed need for the marital residence to be not credible, stating the following:

[T]here was evidence that he sold the backhoe and many tools used for his construction business during the pendency of this case and

he has not had a reasonable profit from his construction business since 2006 or 2007. Neither party is able to afford the marital real estate without the assistance of some other person. The parties' remaining minor child is nearly sixteen years of age and resides in the residence with Plaintiff.

{¶ 90} The magistrate ordered that upon "the child emancipating for child support purposes," the parties shall list the real estate for $290,000.00 and sell the real estate for the "best price obtainable." "All offers shall be conveyed to both parties. Neither party shall refuse any reasonable offer." Until the real estate is sold, the magistrate granted appellee exclusive use of the property, and ordered continuing jurisdiction over the sale of the real property. This same language is included in the Final Judgment Entry Decree of Divorce filed December 16, 2016 at 9.

{¶ 91} In his January 22, 2016 objections at 7, appellant objected to this determination, arguing the real estate should be sold immediately. He noted he has offered to purchase the property for the full Baumberger appraisal price for each parcel, and was willing to rent the house and storage barn to appellee until the child is emancipated.

{¶ 92} In its November 23, 2016 judgment entry denying the objection, the trial court stated the following at 5-6:

Defendant next objects to the Magistrate not ordering the real estate located at * * * to be sold immediately. Defendant's objection is not well-taken. In fact, Defendant admits that the Court has the power to

delay the sale until the parties' child is emancipated. Defendant argues that "it was crippling to his business not to have access to his shop." His argument is not well-taken. As Defendant himself pointed out, the parties' adjusted gross income was only $14,040 in 2011, and his adjusted gross income was only $13,019 in 2012. Defendant had full access to his shop both years. In addition, Defendant's adjusted gross income was only $11,516 in 2013. While Plaintiff was granted exclusive use of the marital residence, including the shop, on November 12, 2013; Defendant did not even know that his use of the shop was restricted until February of 2014.

{¶ 93} The trial court clarified that the real estate could be sold "in one or more parcels."

{¶ 94} We do not find the trial court abused its discretion in awarding appellee exclusive use of the parcel with the home and storage barn until the child is emancipated. However, we find the trial court abused its discretion in denying appellant's request for the immediate sale of the parcel with the shop building. Appellant has made a full offer to purchase the parcel. He or a third party is entitled to purchase the parcel at the "best price obtainable." The vacant parcel remains with the home and storage barn parcel; however, appellant may access the driveway on the parcel.

{¶ 95} Assignment of Error VI is granted in part.

VII

{¶ 96} Appellant claims the trial court erred in denying his request for one-half of the family photographs.  We disagree.

{¶ 97} In her decision filed January 8, 2016, the magistrate at 38 ordered appellee to cooperate with appellant "to obtain duplicates of any of the pictures that he desires.  The parties shall equally divide the cost of obtaining duplicates."

{¶ 98} In his July 8, 2016 amended supplemental objections at 12, appellant objected to this order.

{¶ 99} In its November 23, 2016 judgment entry denying the objection, the trial court noted at 7, the parties "entered into a stipulation regarding the division of photographs of the children and the same is reflected in the Magistrate's decision."

{¶ 100} Upon review, we find the trial court did not abuse its discretion in regard to the family photographs.

{¶ 101} Assignment of Error VII is denied.

VIII

{¶ 102} Appellant claims the trial court erred in awarding a go-cart and two ATVs to appellee.  We disagree.

{¶ 103} Appellee testified the items belong to the children and the ATVs were gifted to them.  T. at 150.  Appellant testified the items were purchased for the children's use, but they had not used the items in years.  T. at 54, 519, 521.

{¶ 104} In his objections filed January 22, 2016, appellant objected to this determination, although he acknowledged understanding that the award of those items was discretionary.

{¶ 105} In its November 23, 2016 judgment entry denying the objection, the trial court noted the award of these items is discretionary. As for appellant's argument that the children do not use the items, the trial court found at 5, appellant "left the marital residence and has not been around the children while at the residence for any significant period of time since."

{¶ 106} As we are reminded by the Supreme Court in *Briganti v. Briganti,* 9 Ohio St.3d 220, 459 N.E.2d 896 (1984), piece meal appeals are not favored.

{¶ 107} Upon review, we do not find the trial court abused its discretion in awarding the go-cart and two ATVs to appellee.

{¶ 108} Assignment of Error VIII is denied.

IX

{¶ 109} Appellant claims the trial court erred in not giving him credit for extra payments he made to the check line accounts under the temporary orders. We disagree.

{¶ 110} In his July 8, 2016 amended supplemental objections at 12, appellant argued the following: "Defendant was ordered to make payments to Two (2) separate check lines in the Temporary Order. Both check lines were paid off by the Defendant. He should be given a credit of $1,800.00 for these payments."

{¶ 111} There is no disposition in the magistrate's decision in regard to these check lines.

{¶ 112} In its November 23, 2016 judgment entry, the trial court denied the objection without explanation.

{¶ 113} It is unclear what "check lines" appellant is referring to. In the temporary orders filed December 18, 2013, appellant was ordered to pay "First Knox checking overdraft loans." In his appellate brief at 27, appellant cited his testimony at 551 wherein he stated: "I have been ordered by the Court to pay on the check lines and the beginning balance of those was $990 on each and I have currently paid down the amounts in excess of what the Court said. And I have the amounts paid down to - - one of the accounts is 200 and something dollars and the other is 300 and something dollars." Appellant does not cite to any evidence on the accounts, what he was required to pay, and what he actually did pay.

{¶ 114} Under the temporary orders, appellant was ordered to pay on the accounts. Appellant cannot now claim a credit for amounts he voluntarily "overpaid" and for which he has presented no evidence thereof.

{¶ 115} Upon review, we find the trial court did not abuse its discretion in not giving him credit for extra payments he made to the check line accounts.

{¶ 116} Assignment of Error IX is denied.

{¶ 117} The judgment of the Court of Common Pleas of Richland County, Ohio, Domestic Relations Division is hereby affirmed in part and reversed in part. The matter is remanded to said court for further proceedings consistent with this opinion.

By Wise, Earle, J.

Delaney, P.J. and

Hoffman, J. concur.

EEW/sg 608